PABLO CANALES ROSA ET AL., ETC., Plaintiffs and Appellees, *v.* TIRSA ALDEA RODRÍGUEZ ET AL., Defendants and Appellants.

No. 9835. Argued January 10, 1949.—Decided May 12, 1949.

*Luis Mendín Sabat* for appellants. *Gustavo L. Marrero Ledesma* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

On October 24, 1939 don Jaime Canales Orozco executed an open will before Notary Andrés Mena Latorre of Caguas by deed No. 316, at the close of which the notary stated:

"The testator and the witnesses mentioned above appeared at the execution of this will and I, the notary, proceed to read this will aloud, the testator and the witnesses having waived their right to read it for themselves, of which right I advised them, and the testator having seen and heard it and the witnesses having understood it states that it was satisfactory to him without there being the necessity of making· any changes in the will, whereby *the witnesses signed it but not the testator because he stated that he does not know how to sign, it being signed at his request by the subscribing witness don Pastor Batista.* Before me, the notary, attesting that I know the testator, his age, profession and residence and that all the formalities have been carried out uninterruptedly as provided by law and to the contents of this public instrument executed in two sheets of paper including this one............................
(Signed)—*By me as witness and at the request of Jaime Canales Orozco, Pastor Batista.*—José C. Esterás.—Emilio Puig.— (Marked, signed and sealed) Andrés Mena. *The original contains the initials of the witness who signed at the request of the testator and the fingerprints of the latter.*—" (Italics ours.)

The testator died on June 1, 1944 and on July 10, 1947 two legitimate children of his first marriage and a grandson, child of another legitimate son deceased, filed the present action against the widow and two granddaughters to whom the testator had left several legacies, alleging that the will was void "because it appear therein that Jaime Canales Orozco did not know how to sign, it being signed at his request by the subscribing witness Pastor Batista, and the truth is that Jaime Canales Orozco, before the execution of this will, at the time of executing the will and after executing it, knew how to sign, read and write. Moreover, although in the will it is stated that it was executed uninterruptedly the truth is that it was not executed without interruption."

The defendants' answer denied the facts of the complaint and alleged certain defenses. Trial was had and the lower court sustained the complaint and annulled the will on the ground that in its execution subdivision three of § 645 read together with § 636 of the Civil Code, (1930 ed)[1] had been violated.

The defendants appealed and alleged that the lower court erred in declaring the will void.

 The oral testimony offered by the parties was contradictory as to whether or not Jaime Canales Orozco knew how to sign. That for the plaintiffs was to the effect that he knew how to read and write although very little, and his son Pedro Canales testified that he had taught his father how to sign and write. However, defendant Tirsa Aldea Rodríguez, testifying as witness for the plaintiffs, admitted that although when she married Jaime Canales Orozco he signed the marriage certificate, yet "recently he could not sign because he was seventy-six years old and was physically incapacitated; he could not hold. . .", he was physically unable "to write." (Page 25, Tr. of Ev.) Furthermore, Pedro Canales himself, plaintiff herein, testifying as witness for the defendants, upon being shown a private document of sale of a piece of land and in which he appears signing for his father,

---

[1] These Sections provides:

"Section 645.—The testator shall declare his last will to the notary and to the witnesses. The will when drawn in accordance with it and with the expression of the place, the year, the month, the day and the hour of its execution shall be read aloud in order that the testator may declare that it is in conformity with his intention. Both the testator and the witnesses may read the will themselves and the notary must inform him of this, his right. If the testator and the witnesses consent the will shall be signed in the act by the testator and by the others who can do it. If the testator declares that he does not know or that he cannot sign, one of the witnesses to the instrument shall do it for him at his request, or another person, and the notary shall certify to that fact. The same shall be done when some of the witnesses cannot sign.

"The notary shall always make it appear that in his judgment the testator is of the legal capacity necessary to execute a will.

"Section 636.—Any will, in the execution of which, the formalities, respectively established in this chapter, have not been observed, shall be void."

stated: ". . . He had been ill many times and could not sign and he called me to sign the documents." (Page 13, 2nd Tr. of Ev.

The documentary evidence was, if possible, still more contradictory. That for the plaintiffs consisted in a series of documents containing the signature of Jaime Canales Orozco. The oldest one is the marriage certificate of Jaime Canales Orozco and Carmen Belén López Rodríguez, his first wife, signed on January 3, 1925. Then a private document signed on April 19, 1931. There are also several public deeds executed by Jaime Canales Orozco, before different notaries, all signed by him. There is a peculiarity about them, however, and that is that they were all executed during the period between May 18, 1927, the first document, and February 10, 1937, the last. There are also other legal documents bearing the signature of Jaime Canales Orozco, all signed between April 7, 1926 and October 10, 1936.

We must bear in mind that the date of the execution of the open will was *October 24, 1939*. All the documentary evidence of the plaintiffs bearing the signature of Jaime Canales Orozco are dated prior to October 24, 1939.

Opposing this evidence, defendants introduced a private document executed on December 5, 1913 wherein Pedro Canales appears signing for his father and a series of public documents executed by Jaime Canales Orozco before different notaries in which he states that he does not know how to sign and does it through a witness, except one wherein he states that he can not sign because he is physically incapacitated to do so and a witness signs for him. These documents also show a peculiarity, and that is that they were all executed between February 16, 1938, the first one, and May 11, 1943, the last. That is since he executed his open will on October 24, 1939 (and even before that date) Jaime Canales Orozco did not execute any other document, according to the evidence, signed by himself. On the contrary, in all those executed subsequent to October 24, 1939, he stated that he did not

know how to sign and in one of them that he was physically unable to do so. These statements in the deeds are corroborated by oral testimony from both parties tending to show that although Jaime Canales Orozco sometime in his life—knowing at least how to sign—[2] stamped his signature in the documents he executed, since a certain date, February 15, 1938, he does not appear signing any document because due to his advanced age and physical incapacity he was unable to write his name.

Under these circumstances, can it be maintained that the will executed by Jaime Canales Orozco on October 24, 1939 is void? We think not.

. The cases of *Ex Parte Planis*, 42 P.R.R. 665; *Rodríguez* v. *Rodríguez*, 62 P.R.R. 855 and *Pacheco* v. *Heirs of Pacheco*, 66 P.R.R. 749, cited by the lower court, because of their facts may be easily distinguished from the case at bar. In the first we held that a document typewritten by another person and merely signed by the testator cannot be regarded as a holographic will. In the *Rodríguez* case we upheld the nullity of a will executed in imminent danger of death where all or some of the witnesses were not residents of, or domiciled in, the municipality where the will was executed and in the *Pacheco* case we held that an open will in which no express mention is made of the hour of the execution is void. In all these cases, either the testator or the notary did not comply, in the execution of the will, with the formalities respectively established in Chapter I of Title 3 of Book 3 of the Civil Code (1930 ed.), rendering the will void pursuant to § 636 of said Code.

In the present case the notary complied with all the formalities required for the open will of Jaime Canales Orozco to be valid. The testator having said that he could not sign,

---

[2] The evidence for the defendants, which was not contradicted, shows that Jaime Canales Orozco was a farmer and also as an spiritualist he often gave "prescriptions" which were written by one of his granddaughters because he did not know how to write.

the notary stated that one of the subscribing witnesses was signing on his behalf at his request. He also stated that the testator had stamped his fingerprints, thereby complying with § 14 of the Notarial Act, as amended by Act No. 7 of March 23, 1937, which provides:

"Section 14.—Should the parties to the instrument, or any of them, not know how to sign, or be unable to do so, the notary shall state the fact, and one of the witnesses shall sign and affix his initials for the party, and such witness shall precede his signature with a note in his own handwriting that he signs for himself as witness and in the name of the party who does not know how, or is unable, to do so; *Provided, further*, That the party or parties to the instrument who do not know how to sign or are unable to do so, shall stamp their finger-prints on each sheet or page."

We have held in *Rosario v. Registrar*, 59 P.R.R. 430, 434, that:

"Unquestionably, the legal requisite of stamping the finger-prints is of the utmost importance, since in that way, in so far as the parties who can not or do not know how to sign are concerned, the lawmaker has succeeded in imparting to the public instrument the seal of indisputable authenticity, in accordance with the latest dictates of science. Indeed, fingerprints can properly take the place of a signature."

Indeed, the fact that the testator states in an open will that he did not sign it because he does not know how to sign, does not mean that the validity of said document can not be challenged by showing, as a matter of fact, that the testator actually knew how to sign and that his failure to do so indicated that he did not wish to sign it. Manresa as well as Scaevola reach this conclusion in commenting § 695 of the Spanish Civil Code, equivalent to § 645 of our Code. However, Scaevola commenting this situation states the following:

". . . That is, whenever the testator states that he does not know how or cannot sign, *knowing and being able to do so*, it is clear that he does not wish to sign and in this event, it is the

same as if the will lacked the testator's signature. Nevertheless, it may happen, as provided by the French Court of Cassation in its judgment of May 5, 1831, that although as a general rule to say that he does not know how to sign when he really does know, amounts to stating in different terms that he does not wish to sign, however, it must be admitted also that frequently a mere peasant or laborer who not knowing how to read or write, has often written his name in certain papers, may candidly say that he does not know how to sign; in such case the will has always been regarded as the product of the intention of the testator freely and spontaneously expressed.

"There are textwriters who admit that if the testator, on making his will was incapacitated to sign it, either because of illness or of paralysis in the hand, and that said incapacity was stated while executing similar authentic documents on previous occasions, according to the intention of the testator the phrase *not to know how* should be considered the equivalent of *not to be able*, the more so when it appears that he was attempting to make a serious and valid will and that the statement is made in good faith and without the intention of uttering a lie. This is why other textwriters ratify our foregoing commentaries in the sense that the intention of the testator which is the guide for construing all testamentary clauses must also serve as the test in settling any conflict arising from the failure of the testator to sign the open will, provided said failure is not properly cured by other means." (First italics ours.) 12 Scaevola, Civil Code, page 432.

The case at bar may be compared to the one decided more than one hundred years ago by the Court of Cassation of France and cited by Scaevola under the Civil Code of that nation containing a provision similar to ours.[3] Here the

---

[3] See 5 Planiol–Ripert, *Derecho Civil Francés*, pages 594–596, § 565, in whose commentary it is said:

". . . The jurisprudence construes the false statement as a refusal to sign which renders the will void (8), except under *special circumstances* said statement may be construed in a different sense (9)." (Italics ours.)

Under footnote (9), on page 596, besides citing the aforesaid case mentioned by Scaevola other cases are invoked wherein the "special circumstance" which served as a basis to declare the will valid was: ". . . if the testator wishes to indicate an actual physical incapacity to sign, by saying he does not know how to sign. . ."

910

testator is a farmer who learns how to write his name and after having signed several documents he subsequently fails to do so and avers that he does not know how or is incapacitated to do so. The phrase "not to know how" in a case like this is equivalent to "not to be able", inasmuch as the evidence warrants such a conclusion. This is not a case where the only document in which the testator states that he does not know how to sign is his will, and all the rest of the evidence, oral as well as documentary, shows without contradiction, that he knew how to write or at least sign and that as a matter of fact during his lifetime, he always signed all public or private documents which he executed. This is the case of an illiterate person who learns how to write his name and for several consecutive years until a certain specific year—1938—he signed all the documents in which he acted as a party, but that after said year and to his death he signed no other document, stating therein that he did not know how or was physically incapacitated to do so, having a witness sign for him, while the testator stamped his fingerprints therein in compliance with the law. Under these special circumstances the fingerprints stamped in the open will executed on October 24, 1939, which have in no way been challenged, successfully substitute, together with the signature of the subscribing witness, the signature of the testator. *Rosario* v. *Registrar, supra.* The absence of the signature of the testator Jaime Canales Orozco, was duly substituted and his last wish expressed therein should prevail.

As to the second ground for nullity, namely, that the will was not executed without interruption, no evidence was presented in support thereof.

The judgment appealed from should be reversed and another rendered instead dismissing the complaint, with costs.